# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

NORTHERN STAR INDUSTRIES, INC.,

        Plaintiff,

v.                                             Civil Action No. 11-C-1103

DOUGLAS DYNAMICS, LLC,

        Defendant.

# DECISION AND ORDER

By this Decision and Order, the Court establishes the amount of bond to be posted by the Plaintiff, Northern Star, Inc. ("Northern Star"), pursuant to Rule 65(d) of the Federal Rules of Civil Procedure and enters a preliminary injunction order pursuant to Rule 65 granting in part Northern Star's preliminary injunction motion. This Decision and Order implements the Court's January 26, 2012, Decision and Order, which set forth the Court's findings of fact and conclusions of law and granted Northern Star's motion in part and denied it in part. At the Court's direction, the parties filed papers regarding the amount of the bond and the precise terms of the preliminary injunction.

## Amount of Bond

Rule 65(c) of the Federal Rules of Civil Procedure requires that the grant of an injunction be conditioned upon the posting of security. *Roche Diagnostics Corp. v. Medical Automation Systems, Inc.*, 646 F.3d 424, 428

(7th Cir. 2011), cautions judges to "take care" that the bond is set high enough to cover the losses that their handiwork could cause. The appeals court's admonishment underscores the purpose of requiring a party obtaining an injunction to post security; that is, to compensate the enjoined party, if it prevails on the merits, for the pecuniary harm caused by a preliminary injunction. *Ty, Inc. v. Publ'n Int'l Ltd.*, 292 F.3d 512, 516 (7th Cir. 2002); *see also Cronin v. U.S. Dep't of Agric.*, 919 F.2d 439, 446 (7th Cir. 1990). Because the damages caused by an erroneous preliminary injunction cannot exceed the amount of the bond posted as security, and because an error in setting the bond too high is not serious, the court of appeals has stated that district courts should err on the high side when setting bond. *See Habitat Educ. Center v. U.S. Forest Serv.*, 607 F.3d 453, 456 (7th Cir. 2010); *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888, *amended*, 209 F.3d 1032 (7th Cir. 2000). While setting the bond amount is within this Court's discretion, it may not simply chose a high figure for bond based on what it thinks is appropriate; instead, it must articulate its reasons for the figure chosen so that a reviewing court can determine whether such figure "was within the range of options from which one could expect a reasonable trial judge to select." *Gateway E. Ry. Co. v. Terminal R.R. Assoc. of St. Louis*, 35 F.3d 1134, 1141-42 (7th Cir. 1994) (quoting *United States v. Koen*, 982 F.2d 1101, 1114 (7th Cir. 1992)).

Defendant Douglas Dynamics LLC ("Dynamics") requests that Northern Star be required to post a $6,200,000 bond. Dynamics relies on the February 1, 2012, declaration of its engineering director, Gary Watson ("Watson"), who estimates the following costs and losses that Dynamics expects as a result of complying with the injunction: (1) the cost of corrective advertising - $ 117,544; (2) the cost of replacement advertising - $117,544;

and (3) lost sales revenue - $5,959,977. Northern Star counters that the requested bond amount is unsubstantiated and far in excess of what is necessary or appropriate in this case, and suggests that the bond should be set at $144,850.

Northern Star asserts that the amounts claimed for corrective advertising should be reduced by the amounts allocated for creative work – $10,009 for the Fisher v-plow and $10,721 for Western v-plow -- because the Court's order will specify what the corrective advertisements must say. The reduction is appropriate. Therefore, the amount of the bond will be reduced by $20,730.

Northern Star also indicates that the estimate for replacement videos -- $16,136 for Fisher and $16,115 for Western -- is too high because only about 45 seconds of the seven-minute Fisher and Western v-plow videos relate to the tripping mechanism and tests. Northern Star indicates that 45 seconds is only about 11 percent of the entire duration of the videos and, therefore, the damages should be limited to 11 percent of those production costs.

Dynamics has divided the estimated costs of revising the videos into four categories: production; DVD/dealer mailing; website (vplowfacts.com); and banner ads. Dynamics intends to shift away from safety to a different theme – which may result in an entirely new production. However, the preliminary injunctive relief does not require Dynamics to change the theme of its advertising campaign. (*See* January 26, 2012, Decision and Order, 30.) The Court will apportion the production costs to reflect the cost of producing 45 seconds of replacement video. The estimated production costs for the replacement videos will be reduced by nine percent (seven times sixty equals 420; 420 seconds divided by 45 equals 9.3. Rounding 9.3 according to standard rounding principles equals nine.) As reduced, the production costs

3

are $1,793 for the Fisher v-plow video and $1,791 for the Western v-plow video.

Northern Star maintains that lost profits rather than lost revenue is a more accurate measure of financial impact to an enjoined party, citing *A.J. Canfield Co. v. Vess Beverages, Inc.*, 796 F.2d 903, 909-10 (7th Cir. 1986) (affirming amount of injunction bond based on potential lost profits and which accounted for "difference in profits" due to injunction); *Manpower, Inc. v. Mason*, 377 F. Supp. 2d 672, 681 (E.D. Wis. 2005) ("The real measure of the pecuniary harm attributable to the injunction is the difference between what plaintiffs' profits would be if they terminated the agreements, took over defendants' business and enforced the noncompete clauses, and what their profits will be now that they cannot do these things."); *Johnson Controls, Inc. v A.P.T. Critical Sys., Inc*., 323 F. Supp. 2d 525, 541-42 (S.D.N.Y. 2004) ("lost profit is a more accurate measure of the potential loss" than lost revenue to enjoined defendants.)

In the latter case, the court was informed that there was an estimated 30 percent profit margin in the industry. *Id*. In this action, no information regarding the profit margin for the snow plow industry has been provided. Nor has either party provided any information from which the Court could estimate any profits that Dynamics will likely lose as a result of a preliminary injunction. Thus, the Court will use the lost revenue figures. *See Standex Corp. v. Premium Composites, LLC*, No. 10-cv-705-slc, 2011 WL 976388, at *1 (W.D. Wis. Mar. 17, 2011) (considering net revenue loss in setting bond).

However, Dynamics' estimate of lost revenue includes lost revenues the Fisher and Western v-plows *and* the Fisher and Western straight plows. Dynamics has not explained or demonstrated how the injunctive relief regarding its v-plow comparative campaign will affect its revenues from its

4

Fisher and Western straight plows. Therefore, the Court will exclude the claimed lost revenues from the Fisher and Western straight plows. The lost revenues from the Fisher and Western v-plows ($3,315,850) and 14 percent lost revenue for parts and accessories ($464,219) totals $3,780,069. That amount plus the costs for corrective and replacement advertising ($185,692) brings the amount of the required bond to $3,965,761. This bond of nearly four million dollars, though reduced, still errs on the high side of any damages that Dynamics may sustain if it is later determined that the preliminary injunction was issued in error. *See Roche Diagnostics Corp.,* 646 F.3d at 428.

On February 10, 2012, Northern Star filed its proposed preliminary injunction order indicating that there was a portion of the proposed order that Dynamics opposed. On February 13, 2012, Dynamics filed its objections which pertain to the two indented paragraphs under section 2(a) of the proposed order. Dynamics' disagreement with the proposed language in the first indented paragraph reflects its intent to inform the reader/viewer that the Court's determination is preliminary. However, Dynamics' statement that it withdraws those advertising claims is banal. Dynamics' critique of the second indented paragraph is not consistent with the Court's determination. The Court has inserted language that captures its finding at page 21 of the January 26, 2012, Decision and Order. Having considered the competing provisions of the proposed preliminary injunctions, the Court issues the following preliminary injunction based upon the parties' submissions, pleadings, the January 5, 2012 evidentiary hearing on Northern Star's preliminary injunction motion and the January 26, 2012, findings of fact and conclusions of law.

**NOW THEREFORE IT IS HEREBY ORDERED THAT**, pending trial and final disposition of this matter or further order of the Court, Dynamics is preliminarily ordered:

1. Not to republish in any format the following statements or photos that appeared on the "Bloody Face and Broken Nose," "Cracked Windshield," "Skull Fracture," and "Raised Manhole Cover" print ads or the Fisher/Western website link pages: "CRASH TEST," "BETTER HAVE A CRASH HELMET," "you're in the crash zone," "you'll experience bone-jarring, windshield banging, steering wheel smacking wake-up calls with every obstacle you encounter," "the results aren't pretty," "[y]ou know the story," the blade "cannot trip," the blade "can't trip," and the trip blade provides "no protection";

2. To edit the revised videos submitted by Dynamics to the Court on January 24, 2012, to include in the videos the following:

(a) a statement, immediately prior to any discussion or video relating to the trip mechanism of trip edge or trip blade plows **[or at the start of the video if all such tests and discussion of the trip edge and trip blade are deleted]** that is both recited by a narrator at a speed that is easily understood and consistent with the narrator's speech throughout the rest of the video presented to the Court on January 24, 2012, and while being read by the narrator, is displayed in print in clearly viewable black Myriad Pro 14 pt font on a white background:

["A"]

On February 15, 2012, the United States District Court for the Eastern District of Wisconsin granted a preliminary injunction relating to certain Douglas Dynamics (Fisher/Western v-plow snowplow) advertisements. The Court made a preliminary finding that, subject to final

determination of the merits of the parties' claims, statements that "the BOSS Power V-XT v-blade cannot trip in the V or scoop mode" and certain statements claiming or implying that users of blade-trip plows will be physically injured but users of Fisher/ Western edge-trip plows will not were literally false. Accordingly, as preliminarily ordered by the Court, Douglas Dynamics withdraws those advertising claims.

**[The following should be added if after further editing any comparison tripping tests or demonstrations are shown in the videos]:**

**["B"]**

The following series of comparison tests were conducted by Fisher/Western. The reliability of the test methodologies which included measuring speed with a speedometer without any type of calibration or verification and using of three different truck models although of a similar vehicle class have been called into question. Comparison tests should be as similar as possible with as many variables controlled as possible, and the variables in Dynamics' tests are not well controlled.

(b) Unless no test runs are shown, the edited video must include at least one test run depicting the BOSS v-plow tripping and clearing the pegs in scoop position;

3. To send to all Fisher/Western dealers via certified mail the letter attached as Exhibit A within two business days of the date of the date Northern Star confirms posting of the bond set by this Order;

4. To post the notice attached as Exhibit B on its Fisher/Western Facebook pages and <u>Plowsite.com</u> threads (Western Plows Discussion, Boss Plows Discussion, Fisher Engineer Discussion, Commercial Snow Removal, Non-Commercial Snow Removal), within two business days of the date that Northern Star confirms posting of the bond set by this Order, in the same font

and size existing in the discussions on those threads and, to the extent removal is under Dynamics' direction and subject to its control, not to remove the same until February 15, 2013, or until further order of the Court;

5. To run full-page print ads publishing the notice attached to this Order as Exhibit B using the same font, font size, substance and format depicted in Exhibit B in the August, September, and October 2012 issues of *Snow Business,* the October 2012 issue of *Snow Manager,* the October 2012 issue of *Total Landscape Care,* the August and September 2012 issues of *Snow Magazine,* and the September and November 2012 issues of *SnowPro;* and

6. To file with the Court and serve upon Northern Star, within 30 days after entry of this Order, a statement setting forth the steps it has taken to comply with this Order, and the responses it has received from its dealers to the request included in Exhibit A.

This Order is conditioned upon Northern Star giving security by depositing with the Clerk of Court the sum of $3,965,761 in a cashier's check or other certified funds within ten days of the date of entry of this Order to secure the responsibility of Northern Star to compensate Dynamics for costs and other injury that the latter may incur should it be determined that Northern Star's preliminary injunction motion was improvidently granted.

Failure to provide the requisite security will cause this Order to lapse without further order of the Court. If Northern Star provides the requisite security, this preliminary injunction will remain in effect until further order of the Court, and the $3,965,761 security will remain with the Clerk of Court until further order of the Court.

Dated at Milwaukee, Wisconsin, this 15th day of February, 2012.

**BY THE COURT**:

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**